UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
                                       :

THE PHOENIX INSURANCE COMPANY,    :

                            Plaintiff,     :

                                         :                      21 Civ. 4474 (JPC)

              -v-                     :

                                         :                  OPINION AND ORDER

HUDSON EXCESS INSURANCE COMPANY,   :

                                       :

                         Defendant.      :

---------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      In this diversity action, Plaintiff The Phoenix Insurance Company ("Phoenix") seeks, among other things, declarations that (1) Defendant Hudson Excess Insurance Company ("Hudson") has a duty to defend Phoenix's insured, Nucor Construction Corp. ("Nucor"), and The Estée Lauder Companies, Inc. ("Estée Lauder") in connection with an underlying personal injury action pending in New York County Supreme Court (the "Underlying Action"), and (2) Hudson's coverage obligations are primary to Phoenix's.  Before the Court is Phoenix's motion for partial summary judgment.  For the reasons discussed, the motion is granted.

## I.  Background

### A.  Facts[1]

      On June 21, 2017, Estée Lauder hired Nucor—Phoenix's insured, Deft. Counter 56.1 Stmt. ¶¶ 1-2, 9—as a contractor in connection with a renovation at the Bumble and Bumble salon located

---

[1] The following facts are drawn primarily from Phoenix's statement of undisputed material facts under Local Civil Rule 56.1(a), Dkt. 46, Hudson's counter-statement under Rule 56.1(b), Dkt. 50 ("Deft. Counter 56.1 Stmt."), Phoenix's reply statement, Dkt. 52, and the exhibits attached

in the Meatpacking District of Manhattan (the "Renovation Project"). *Id.* ¶ 9. Nucor subsequently engaged Hudson's insured, Anfield Interiors, Inc. ("Anfield"), *id.* ¶¶ 4-5, as a subcontractor to perform certain work for the Renovation Project, *id.* ¶ 17, including to "[f]urnish and install all Drywall and Ceiling work," Dkt. 44 ("Szczepanski Declaration"), Exh. 5 ("Purchase Order") at DEF-00948[2]; *see also* Deft. Counter 56.1 Stmt. ¶ 19. As alleged in the Underlying Action, on September 11, 2017, Juan Fernandez—an employee of Manhattan Fine Cleaners who was doing work at the construction site, Szczepanski Declaration, Exh. 10 ("Nucor Underlying Compl.") ¶¶ 46-47; Szczepanski Declaration, Exh. 15 at pp. 2-11 ("Underlying Bill of Particulars") ¶¶ 2-4, 12(a)—was injured "when a temporarily suspended ceiling collapsed onto him." Nucor Underlying Compl. ¶ 53.

### 1.    Insurance Coverage

Pursuant to the agreement between Nucor and Estée Lauder, Nucor was required to maintain insurance for the Renovation Project covering among other things "claims for damages because of bodily injury . . . which may arise out of or result from [Nucor's] operations and completed operations under the Contract, whether such operations be by [Nucor] or by a Subcontractor or anyone directly or indirectly employed by any of them." Szczepanski Declaration, Exh. 3 ("Estée-Nucor Agreement") at DEF-00194. The Estée-Nucor Agreement also required that Nucor add Estée Lauder to its coverage as an "additional insured[] for claims caused in whole or in part by [Nucor's] negligent acts or omissions." *Id.*[3]

---

to those filings. Unless otherwise noted, the Court cites only to Hudson's Rule 56.1 counter-statement where the parties do not dispute the fact.

[2] Certain exhibits are cited herein to their discovery Bates numbers.

[3] "Additional insured" is a common term in insurance contracts, "the well-understood meaning" of which is "an entity enjoying the protection as the named insured." *Pecker Iron Works*

That additional insured coverage was provided by Phoenix pursuant to a commercial general liability insurance policy with Nucor bearing the number DT1N-CO-2H169545-PHX-17, with effective dates of June 13, 2017 to June 13, 2018.  *See* Szczepanski Declaration, Exh. 1 ("Phoenix Policy") at TRV02741; Deft. Counter 56.1 Stmt. ¶¶ 1-2.  As relevant here, the Phoenix Policy contained an "additional insured" endorsement which extended coverage under the Policy to those whom Nucor had "agree[d] in a 'written contract requiring insurance' to include as an additional insured . . . with respect to liability for 'bodily injury', 'property damage' or 'personal injury'" if such harm "is caused by acts or omissions of [Nucor] or [its] subcontractor."  Phoenix Policy at TRV02784.  The Phoenix Policy also contained an "other insurance" clause,[4] providing that coverage under the Policy "is excess over any of the other insurance, whether primary, excess, contingent or on any other basis, that is available to the insured when the insured is added as an additional insured under any other policy, including any umbrella or excess policy."  *Id.* at TRV02780.

Anfield was also required to maintain insurance coverage pursuant to its general services contract with Nucor.  Deft. Counter 56.1 Stmt. ¶ 14; *see* Szczepanski Declaration, Exh. 4 ("General Services Contract").  In particular, the General Services Contract required Anfield to maintain

---

*of N.Y., Inc. v. Traveler's Ins. Co.*, 786 N.E.2d 863, 864 (N.Y. 2003) (internal quotation marks omitted).

[4] "In insurance contracts the term 'other insurance' describes a situation where two or more insurance policies cover the same risk in the name of, or for the benefit of, the same person."  *Great N. Ins. Co. v. Mount Vernon Fire Ins. Co.*, 708 N.E.2d 167, 170 (N.Y. 1999).  Thus, an "other insurance" clause "limits an insurer's liability where other insurance may cover the same loss" which "may be accomplished by providing that the insurance provided by the policy is excess to the insurance provided by other policies, in which case the other insurance clause is known as an excess clause," or "may limit the insurer's liability by providing that, if other insurance is available, all insurers will be responsible for a stated portion of the loss," which is known as a "pro rata clause."  *Sport Rock Int'l, Inc. v. Am. Cas. Co. of Reading, Pa.*, 878 N.Y.S.2d 339, 344 (1st Dep't 2009).

insurance coverage with, *inter alia*, a coverage limit of $1,000,000 for each occurrence of "Bodily Injury and Property Damage" with a general aggregate limit of $2,000,000, with that coverage applicable to "all work to be performed by [Anfield] and their subcontractors."  General Services Contract at DEF-00942; *see also* Deft. Counter 56.1 Stmt. ¶ 14.  The General Services Contract also required Anfield to provide coverage for the following "additional insureds": "Nucor Construction Corp., Owner, and their directors, officers, employees and affiliates."  General Services Contract at DEF-00944.  Under that contract, the coverage for additional insureds "is primary, . . . and any other insurance or self-insurance maintained by Nucor . . . and any other additional insured . . . shall be excess only and shall not be called upon to contribute with this insurance."  *Id.*

Anfield's coverage was provided by Hudson pursuant to a commercial general liability insurance policy bearing the number HXMP100963, with effective dates of April 20, 2017 to April 20, 2018.  Deft. Counter 56.1 Stmt. ¶¶ 4-5; *see* Szczepanski Declaration, Exh. 2 ("Hudson Primary Policy").[5]  As relevant here, the Hudson Primary Policy contained an additional insured

---

[5] Anfield also appears to have obtained additional insurance coverage from Hudson pursuant to a commercial *excess* liability insurance policy bearing the number HXMX200855, with effective dates of May 8, 2017 to April 20, 2018.  *See* Dkt. 49-2 ("Hudson Excess Policy"); *see also Ali v. Fed. Ins. Co.*, 719 F.3d 83, 91 (2d Cir. 2013) ("[E]xcess liability policies . . . provide an additional layer of coverage for losses that exceed the limits of a primary liability policy. Coverage under an excess policy thus is triggered when the liability limits of the underlying primary insurance policy have been exhausted." (quoting *Horace Mann Ins. Co. v. Gen. Star Nat'l Ins. Co.*, 514 F.3d 327, 329 (4th Cir. 2008))).  However, despite previously tendering a demand to defend Nucor under the Hudson Excess Policy, *see infra* I.3, Phoenix's requested relief in this action, as alleged in the Amended Complaint, appears to be limited to a declaration regarding the Hudson Primary Policy only.  *See* Dkt. 19 ("Am. Compl.") at 6-7 (Prayer for Relief) ¶¶ 1-3, 6 (seeking declarations that "Nucor is an insured under the Hudson Policy"; "that [Estée Lauder] is an insured under the Hudson Policy"; "that Hudson has a duty to defend Nucor and [Estée Lauder] in the Underlying Action up to and including the respective policy limits of the Hudson Policy"; and "that the obligations of [Phoenix] to Nucor and [Estée Lauder] in the Underlying Action are excess to proper exhaustion and full payment of the respective limits of the Hudson Policy");

endorsement, extending coverage "with respect to liability for 'bodily injury', 'property damage' or 'personal and advertising injury' caused, in whole or in part by . . . [Anfield's] act or omissions[,] or . . . [t]he acts or omissions of those acting on [Anfield's] behalf" to two categories of additional insureds: (1) "[a]ny person or organization for whom [Anfield is] performing operations when [Anfield] and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured," and (2) "[a]ny other person or organization [which Anfield is] required to add as an additional insured under the contract or agreement [previously] described."   Hudson Primary Policy at DEF-00818; Deft. Counter 56.1 Stmt. ¶ 6.  In addition, the Hudson Primary Policy contained the following "other insurance" provision:

> This insurance is primary except when Paragraph b. below [which concerns "Excess Insurance"] applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in Paragraph c. below.

Hudson Primary Policy at DEF-00806; *see also* Deft. Counter 56.1 Stmt. ¶ 7 (quoting the various exceptions in Paragraph b. of the Hudson Primary Policy).  Moreover, the Hudson Primary Policy stated:

> When you are specifically required by a written contract to provide insurance that is primary and non-contributory and the written contract so requiring is executed by you before any "occurrence" or offense, this insurance will be primary and the other insurance will not contribute with this insurance, but only if and to the extent required by that written contract.

Hudson Primary Policy at DEF-00841.

---

*accord id.* ¶ 9 (defining the "Hudson Policy" as the "Commercial General Liability Policy" issued to "Anfield" bearing the policy number HXMP100963—*i.e.*, the Hudson Primary Policy).

2.      **The Underlying Action**

On December 13, 2018, Fernandez initiated the Underlying Action by filing a complaint in New York County Supreme Court naming Sub 412 Associates, LLC, 2398 Realty Associates, LLC, Aramis, Inc., and Design Republic Partners Architects, LLP as defendants.  *See* Deft. Counter 56.1 Stmt. ¶ 21.[6]  Three of those defendants subsequently filed third-party complaints against Nucor for common law indemnification, contribution, contractual indemnity, and breach of contract.  *Id.* ¶¶ 22-24.  On November 20, 2019, Fernandez amended his complaint in the Underlying Action to add Nucor as a defendant, *id.* ¶ 25; *see generally* Nucor Underlying Compl., and then on August 4, 2020, Fernandez filed a second complaint in New York County Supreme Court against Estée Lauder, Deft. Counter 56.1 Stmt. ¶ 28; *see generally* Szczepanski Declaration, Exh. 13 ("Estée Lauder Underlying Compl.").  Those complaints were eventually consolidated on May 14, 2021.  *See* Szczepanski Declaration, Exh. 16.

In general, Fernandez alleges negligence and violations of the New York Labor Law and seeks damages in connection with the alleged September 11, 2017 accident at the Renovation Project.  Deft. Counter 56.1 Stmt. ¶¶ 31-32.  More specifically, he alleges that the defendants in the Underlying Action, including their "agents, servants and/or employees," were responsible for "causing and/or permitting the premises under construction to be and remain in a dangerous, improper and unlawful condition," Nucor Underlying Compl. ¶ 84; *see also* Estée Lauder Underlying Compl. ¶ 25; "allowing portions of the ceiling and floor, to be, become and remain inadequately and improperly secured, loose, wobbly, and likely to fall"; "failing to adequately

---

[6] While the record in this case does not contain any facts as to who these parties are or how they are related, according to the allegations in Fernandez's state court complaint, each was involved with the Renovation Project in a contractor capacity and retained Nucor "to provide work, labor, and/or services at the premises."  *See generally* Nucor Underlying Compl.

secure the plywood and sheetrock which fell"; and "allowing the portion of the ceiling and floor which fell upon [Fernandez] to be left unsupported or unguarded and or in such position that it could fall, collapse, or be weakened by wind pressure or vibration," among other allegations, Underlying Bill of Particulars ¶ 5.  *See also* Deft. Counter 56.1 Stmt. ¶¶ 31-32.

Nucor, Estée Lauder, and Aramis each filed third-party complaints in the Underlying Action against Anfield for common law indemnification, contribution, contractual indemnity, and breach of contract.  *See* Deft. Counter 56.1 Stmt. ¶ 26-27, 29.  Aramis's third-party complaint, which was filed March 12, 2020, alleges that Anfield was contracted "to provide construction services in connection with" the Renovation Project, Szczepanski Declaration, Exh. 12 ("Aramis Underlying Third-Party Complaint") ¶ 9; that on the day of the accident, Anfield was "engaged in performing construction work and services at the construction site, *id.* ¶ 10; and that "[t]o the extent [Fernandez's] injuries as alleged . . . are proven to be true at trial, said injuries arose out of or resulted from the performance by Nucor and Anfield of the work and services defined in the contracts and performed on the premises," *id.* ¶ 27.  Nucor's third-party complaint, which was filed on February 10, 2020, similarly alleges that Fernandez's accident was caused by Anfield's "wrongful conduct, negligence, carelessness and/or breach of contract in the performance of certain work" for the Renovation Project, and that if Nucor is held liable to Fernandez, "such liability shall derive from the active and affirmative wrongdoing of [Anfield]."  Szczepanski Declaration, Exh. 11 ("Nucor Underlying Third-Party Complaint") ¶¶ 7, 10.

### 3.    Tenders

On October 18, 2017, prior to Fernandez even initiating the Underlying Action, Phoenix tendered to Hudson its first demand that Hudson "defend and indemnify Nucor . . . and the owner . . . on a primary and non-contributory basis"—*i.e.*, under the Hudson Primary Policy— based on an investigation which purportedly revealed that Anfield "was in the process of installing

a suspended ceiling when it collapsed."  Dkt. 45 ("Bianchi Declaration"), Exh. 19 at 1-2; Deft. Counter 56.1 Stmt. ¶ 39.  On February 22, 2018, after Fernandez had initiated the Underlying Action, Phoenix retendered[7] the defense and indemnity of "Nucor and additional Indemnities" to Hudson.  Bianchi Declaration, Exh. 20.  Hudson denied the tender as "premature" on September 4, 2018.  Deft. Counter 56.1 Stmt. ¶ 41.

On November 25, 2019, after Fernandez added Nucor as a defendant in the Underlying Action, Phoenix once again tendered the defense and indemnity of Nucor to Hudson.  *Id.* ¶ 42. This time, however, Phoenix sought indemnity "under [Hudson's Primary Policy] and excess policies."  Bianchi Declaration, Exh. 21 at TRV00349.  Hudson responded on December 2, 2019 that it agreed to "accept[] tender for Nucor . . . only and will defend and indemnify same without reservation on a *primary/noncontributory basis* without reservation in accordance with the terms and conditions of the [Hudson Primary Policy]."  Bianchi Declaration, Exh. 22 (emphasis added); *see also* Deft. Counter 56.1 Stmt. ¶ 43.  When pressed by Phoenix, Hudson clarified that it was agreeing to defend and indemnify Nucor under only the Hudson Primary Policy.  *See* Deft. Counter 56.1 Stmt. ¶¶ 44-45; Bianchi Declaration, Exh. 23.  Hudson denied Phoenix's tender to defend and indemnify under the Hudson Excess Policy.  Deft. Counter 56.1 Stmt. ¶ 45.  Phoenix asked Hudson to reconsider its tender response the following day, but Hudson declined to do so.  *Id.* ¶¶ 46-47.

On October 6, 2020, after Estée Lauder was added as a defendant in the Underlying Action, Phoenix supplemented its previously tendered request and asked that Hudson defend and indemnify Estée Lauder in the Underlying Action.  Bianchi Declaration, Exh. 24; Deft. Counter 56.1 Stmt. ¶ 48.  Hudson denied tender "for any defendants including [Estée Lauder]" the same

---

[7] Hudson claims to have denied the first tender as "premature," Deft. Counter 56.1 Stmt. ¶ 41, although the record lacks any evidence to support this assertion.

day.  Bianchi Declaration, Exh. 24.  On February 15, 2021, Phoenix retendered for the final time

the defense and indemnification of both Nucor and Estée Lauder to Hudson.  *See* Bianchi

Declaration, Exh. 25.  After Hudson failed to respond to this final tender, on August 18, 2021,

Phoenix agreed to assume the defense of Estée Lauder in the Underlying Action, subject to a

reservation of rights.  Deft. Counter 56.1 Stmt. ¶ 52.  Phoenix avers that, as of the date of its

motion, while Estée Lauder has yet to accept or decline Phoenix's coverage offer, Phoenix has

been providing a defense to Nucor in the Underlying Action (including by covering the costs of

Nucor's third-party action against Anfield) and has amassed total expenses of $193,980.05.

Bianchi Decl. ¶¶ 2-4, 17.

**B.     Procedural History**

Phoenix initiated the instant action on May 18, 2021, Dkt. 1, and amended its complaint

on August 27, 2021.  The relief Phoenix seeks in the Amended Complaint includes the following

declarations:

1.     Declaring that Nucor is an insured under the Hudson [Primary[8]] Policy to whom Hudson owes coverage with respect to the Underlying Action;

2.     Declaring that [Estée Lauder] is an insured under the Hudson [Primary] Policy to whom Hudson owes coverage with respect to the Underlying Action;

3.     Declaring that Hudson has a duty to defend Nucor and [Estée Lauder] in the Underlying Action up to and including the respective policy limits of the Hudson [Primary] Policy;

4.     Declaring that all coverage owed by Hudson to Nucor and [Estée Lauder] with respect to the Underlying Action is primary to any coverage provided by [Phoenix] to Nucor and [Estée Lauder];

5.     Declaring that the obligations of Hudson to Nucor and [Estée Lauder] with respect to the Underlying Action are primary to any obligations of [Phoenix] to Nucor and [Estée Lauder];

6.     Declaring that the obligations of [Phoenix] to Nucor and [Estée Lauder] in the Underlying Action are excess to proper exhaustion and full payment of

---

[8] *See* n.6 *supra*.

> the respective limits of the Hudson [Primary] Policy by means of a verdict, judgment, or settlement . . . .

Am. Compl. at 6-7.  Phoenix also seeks a judgment "in an amount equal to the sums that [Phoenix] incurred and continues to incur in defending the claims against Nucor and [Estée Lauder] in the Underlying Action" as well as "any sums that [Phoenix] may incur to resolve and indemnify Nucor and [Estée Lauder] for claims in the Underlying Action."  *Id.* at 7.

Hudson answered the Amended Complaint on September 23, 2021, Dkt. 20, and the parties engaged in discovery, *see* Dkt. 22.  Following unsuccessful settlement discussions, *see* Dkts. 26-27; July 7, 2022 Minute Entry, Phoenix notified the Court of its intent to move for partial summary judgment seeking a declaration that Hudson has a duty to defend Nucor and Estée Lauder in the Underlying Action.  Dkt. 38.  Pursuant to a briefing schedule set by the Court, Dkt. 41, Phoenix moved for partial summary judgment on September 2, 2022, Dkts. 44-46, 47 ("Motion"), Hudson opposed on September 30, 2022, Dkts. 48 ("Opposition"), 49-50, and Phoenix replied on October 14, 2022, Dkts. 51 ("Reply"), 52.

## II.  Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and may discharge its burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden

of proof at trial," *id.* at 322.  "If the moving party meets its initial burden, the nonmoving party must then set forth specific facts showing that there is a genuine issue for trial using affidavits or other evidence in the record, and cannot rely on the mere allegations or denials contained in the pleadings." *Better Holdco, Inc. v. Beeline Loans, Inc.*, No. 20 Civ. 8686 (JPC), 2023 WL 2711417, at *30 (S.D.N.Y. Mar. 30, 2023) (internal quotation marks omitted); *see also Anderson*, 477 U.S. at 248.  The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . and . . . may not rely on conclusory allegations or unsubstantiated speculation. . . .  [A] nonmoving party must offer some hard evidence showing that its version of the events is not wholly fanciful." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (internal quotation marks and citations omitted); s*ee also Anderson*, 477 U.S. at 252 (requiring the non-movant to present more than a "scintilla of evidence").  "Where no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (internal quotation marks and citation omitted).

In deciding a motion for summary judgment, the Court must "resolve all ambiguities and draw all justifiable factual inferences in favor of the party against whom summary judgment is sought." *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).  At the same time, however, the Court may not afford the nonmovant any "unreasonable inferences, or inferences at war with undisputed facts." *Susana v. NY Waterway*, No. 20 Civ. 455 (JPC), 2023 WL 2575050, at *5 (S.D.N.Y. Mar. 20, 2023) (internal quotation marks omitted).

### III.  Discussion

The primary question before the Court is whether Hudson has a duty to defend Nucor and Estée Lauder in the Underlying Action.  *See, e.g.*, Motion at 1; Am. Compl. ¶ 2.  To be sure, the

Court is not being asked to decide whether Juan Fernandez was injured at the Renovation Project, what caused that injury, whether Nucor, Anfield, or someone else was responsible for that injury, and if so, whether Phoenix and/or Hudson are required to indemnify Fernandez for any injuries he suffered.  *See Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014) ("In New York, an insurer's duty to defend is . . . distinct from the duty to indemnify. . . .  Thus, an insurer may be required to defend under the contract even though it may not be required to pay once the litigation has run its course."  (internal quotation marks omitted)).  Rather, the question is whether Hudson has an obligation to pay for the defense of Nucor and Estée Lauder in the Underlying Action.  *Charter Oak Fire Ins. Co. v. Zurich Am. Ins. Co.*, 462 F. Supp. 3d 317, 323 (S.D.N.Y. 2020) ("The duty to defend has been described as a form of 'litigation insurance.'" (quoting *BP Air Conditioning Corp. v. One Beacon Ins. Grp.*, 871 N.E.2d 1128, 1132 (N.Y. 2007))).

Because, as explained *infra*, the Court finds that Hudson has a duty to defend both Nucor and Estée Lauder in the Underlying Action, the Court will also address the priority of coverage—*i.e.*, whether Hudson's duty to defend is primary or secondary to Phoenix's, *see* Motion at 12-13—and whether Phoenix has waived any right to seek defense costs from Hudson, *see* Opposition at 11-13.[9]

---

[9] Hudson also argues that "assuming without conceding that the Court finds a duty to defend is owed . . . , the reasonable costs of defense cannot be determined from the papers," and thus "any determination of the amount of defense costs owed and the reasonableness of the same [is] premature unless and until . . . the bills have been produced, reviewed, and deemed reasonable by the Court."  Opposition at 13-14.  But Phoenix's motion does not ask the Court to make a "determination of the amount of defense costs owed," and so the Court declines to address that issue at this time.

### A.   Duty to Defend

Under New York law,[10] "the duty of an insurer to defend its insured is 'exceedingly broad'
and far more expansive than the duty to indemnify." *High Point Design, LLC v. L.M. Ins. Corp.*,
911 F.3d 89, 94 (2d Cir. 2018) (quoting *Cont'l Cas. Co. v. Rapid-Am. Corp.*, 80 N.Y.2d 640, 648
(N.Y. 1993)); *accord Regal Constr. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 930
N.E.2d 259, 261-62 (N.Y. 2010) (noting that "[t]his standard applies equally to additional insureds
and named insureds").   The duty to defend may be refused "only if it could be concluded as a
matter of law that there is no possible factual or legal basis on which [the insurer] might eventually
be held to be obligated to indemnify [the insured] under any provision of the insurance policy."
*CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 82 (2d Cir. 2013) (quoting *Servidone
Constr. Corp. v. Sec. Ins. Co. of Hartford*, 64 N.Y.2d 419, 424 (N.Y. 1985)).   In other words, "if
there is either a possible factual or legal basis on which the insurer might eventually be obligated
to indemnify, the insurer has a duty to defend." *Charter Oak Fire Ins. Co.*, 462 F. Supp. 3d at 323.

Under the "four corners" rule," New York courts first determine whether "the allegations
within the four corners of the underlying complaint potentially give rise to a covered claim."
*Worth Const. Co. v. Admiral Ins. Co.*, 888 N.E.2d 1043, 1045 (N.Y. 2008) (internal quotation
marks omitted).   The allegations in the underlying pleadings must be "liberally construed," with
"[a]ny doubt as to whether the allegations state a claim within the coverage of the
policy . . . resolved in favor of the insured and against the carrier." *Euchner-USA*, 754 F.3d at 141
(quoting *Brook Shopping Ctr. v. Liberty Mut. Ins. Co.*, 439 N.Y.S.2d 10, 12 (1st Dep't 1981)).
The guiding question is whether the underlying pleadings "suggest a *reasonable possibility* of

---

[10] "The parties' briefs assume that New York law controls this dispute, and such implied
consent is sufficient to establish choice of law." *Santalucia v. Sebright Transp., Inc.*, 332 F.3d
293, 296 (2d Cir. 2000) (internal quotation marks omitted).

coverage." *Automobile Ins. Co. of Hartford v. Cook*, 850 N.E.2d 1152, 1155 (N.Y. 2006) (internal ellipsis omitted) (emphasis added). "If [a] complaint contains any facts or allegations which bring the claim even potentially within the protection purchased, the insurer is obligated to defend." *Regal Constr. Corp.*, 930 N.E.2d at 261 (quoting *BP Air Conditioning Corp.*, 871 N.E.2d at 1131).

However, even where the underlying pleadings do not themselves "contain facts or law suggesting a possibility of coverage, the insurer is required 'to provide a defense when it has actual knowledge of facts establishing a reasonable possibility of coverage.'" *Charter Oak Fire Ins. Co.*, 462 F. Supp. 3d at 324 (quoting *Fitzpatrick v. Am. Honda Co.*, 575 N.E.2d 90, 93 (N.Y. 1993)). This is because "the duty to defend derives, in the first instance, not from the complaint drafted by a third party, but rather from the insurer's own contract with the insured." *Fitzpatrick*, 575 N.E.2d at 93. As such, "a contrary rule making the terms of the complaint controlling would allow the insurer to construct a formal fortress of the third party's pleadings . . . thereby successfully ignoring true but unpleaded facts within its knowledge that require it . . . to conduct the . . . insured's defense." *Id.* (internal quotation marks omitted).

### 1. Analysis as to Nucor

Starting with Nucor, Hudson does not appear to dispute Phoenix's contentions that Nucor was a required additional insured under the Hudson Primary Policy pursuant to the General Services Contract between Nucor and Anfield, or that the Hudson Primary Policy created a duty to defend Nucor for lawsuits based on injuries proximately caused by Anfield. *See* Motion at 10-11. And the Court agrees. The General Services Contract between Nucor and Anfield expressly required Anfield's insurance to cover "[t]he following . . . as additional insureds . . . as respects General Liability, Auto and Umbrella policies: *Nucor Construction Corp.*, . . . and their directors, officers, employees and affiliates." General Services Contract at DEF-00944 (emphasis added). The Hudson Primary Policy, in turn, included an endorsement extending its coverage to "[a]ny

person or organization for whom [Anfield is] performing operations when [Anfield] and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on [Anfield's] policy" for "liability . . . caused, in whole or in part, by . . . [Anfield's] acts or omissions; or . . . [t]he acts or omissions of those acting on [Anfield's] behalf."  Hudson Primary Policy at DEF-00818.  Thus, the Hudson Primary Policy covered Nucor as an additional insured for any injury "proximately caused by the named insured"—here, Anfield.  *Burlington Ins. Co. v. NYC Transit Auth.*, 79 N.E.3d 477, 478 (N.Y. 2017); *see also Liberty Mut. Ins. Corp. v. N.Y. Marine & Gen. Ins. Co.*, 505 F. Supp. 3d 260, 271 (S.D.N.Y. 2020).

Hudson argues, however, that the allegations in the Underlying Action do not give rise to a "reasonable possibility" that Anfield proximately caused the accident because Fernandez did not name Anfield as a defendant in his Complaint.  *See* Opposition at 8 ("The Claimant made no claims of negligence in his complaint against Anfield, Hudson's named insured."); *see generally* Nucor Underlying Compl.  The absence of allegations by Fernandez against Anfield in the Underlying Action is not dispositive.  Rather, the allegations in the Underlying Action—both Fernandez's allegations and the allegations contained in the Underlying Third-Party Complaints—along with facts which Hudson actually knew plainly establish a reasonable possibility of coverage.

Importantly, when deciding whether the pleadings in an underlying action create a reasonable possibility of coverage, courts often consider not just the claimant's underlying complaint, but also any relevant third-party complaints impleading the named insured.  *See, e.g.*, *All State Interior Demolition Inc. v. Scottsdale Ins. Co.*, 92 N.Y.S.3d 256, 257 (1st Dep't 2019) ("[T]he third-party complaint brought in the underlying action by plaintiffs herein against [the defendant's insured] . . . alleges that [the insured] was negligent, and seeks indemnification from

15

[the insured], and is therefore sufficient to trigger [the defendant's] obligation to defend . . . ."); *Sw. Marine Gen. Ins. Co. v. United Specialty Ins. Co.*, No. 19 Civ. 8857 (ER), 2022 WL 3904096, at *2 (S.D.N.Y. Aug. 30, 2022) (reversing prior decision on reconsideration and holding that it was "clear error" not to consider the allegations in a third-party complaint in the underlying litigation, and concluding that such "third-party complaint . . . creates a 'reasonable possibility' that [the claimant's] injuries fall within the scope of [the] policy"); *U.S. Specialty Ins. Co. v. Harleysville Worcester Ins. Co.*, No. 20 Civ. 7691 (SLC), 2021 WL 4043457, at *8-9 (S.D.N.Y. Sept. 3, 2021) (finding a duty to defend "because there is a 'reasonable possibility' that coverage of the Owner, under the . . . Policy, is implicated by the Third Party Complaint").

In his Complaint in the Underlying Action, Fernandez alleges that "[Nucor], its agents, servants and/or employees" were negligent by "causing and/or permitting the premises under construction to be and remain in a dangerous, improper and unlawful condition," Nucor Underlying Compl. ¶ 84, and that he was injured "when a temporarily suspended ceiling collapsed onto him by reason of the negligence of the defendant, its agents, servants and/or employees," *id.* ¶ 53. *See also* Underlying Bill of Particulars ¶ 5 (alleging negligence based on Nucor's "allowing portions of the ceiling and floor, to be, become and remain inadequately and improperly secured, loose, wobbly, and likely to fall"; "failing to adequately secure the plywood and sheetrock which fell"; and "allowing the portion of the ceiling and floor which fell upon [Fernandez] to be left unsupported or unguarded and or in such position that it could fall, collapse, or be weakened by wind pressure or vibration," among other reasons).  Then Nucor, in its Third-Party Complaint, responded by pointing its proverbial finger at Anfield and alleging that Fernandez's accident was caused by Anfield's "wrongful conduct, negligence, carelessness and/or breach of contract in the performance of certain work" for the Renovation Project, and that if Nucor is held liable to

Fernandez, "such liability shall derive from the active and affirmative wrongdoing of [Anfield]." Nucor Underlying Third-Party Compl. ¶¶ 7, 10.  This allegation is "sufficient to trigger [Hudson's] obligation to defend [Nucor]."  *See All State Interior Demolition*, 92 N.Y.S.3d at 257 (finding a similar allegation to be sufficient to establish a reasonable possibility of coverage).

Hudson urges the Court to "reject[]" Nucor's allegations against Anfield in its Third-Party Complaint as "the type of 'shot-gun' allegation[s] designed specifically to trigger coverage." Opposition at 8.  It argues that "[t]he allegations of negligence cited by Phoenix come from its named insured—Nucor—in documents generated by Nucor specifically to shift any blame for the alleged accident from Nucor . . . to Anfield."  *Id.*  While true that the New York Court of Appeals has warned that "[w]e will not permit . . . one patently 'groundless' and 'shot-gun' allegation to create a duty to defend far beyond that which defendant could have anticipated when it issued this policy," *Lionel Freedman, Inc. v. Glens Falls Ins. Co.*, 267 N.E.2d 93, 95 (N.Y. 1971), that is not the case here.  The allegations of Anfield's involvement and fault in causing Fernandez's accident in Nucor's Third-Party Complaint are echoed and described in even more detail in another pleading in the Underlying Action.  *See* Aramis Underlying Third-Party Compl.  In its Third-Party Complaint, Aramis alleges that Anfield was contracted "to provide construction services in connection with" the Renovation Project, *id.* ¶ 9; that on the day of the accident, Anfield was "engaged in performing construction work and services" at the premises, *id.* ¶ 10; and that "[t]o the extent [Fernandez's] injuries as alleged . . . are proven to be true at trial, said injuries arose out of or resulted from the performance by Anfield of the work and services defined in the construction contract and performed on the premises," *id.* ¶ 26.  These allegations on their own sufficiently establish a reasonable possibility of coverage.  *Cf. Charter Oak Fire Ins. Co.*, 462 F. Supp. 3d at

326 ("New York law requires only a 'reasonable possibility' that the insurer will have an indemnification obligation, not a plausible case.").

What is more, even putting aside the allegations in those Third-Party Complaints in the Underlying Action, Fernandez's Complaint in that action, coupled with facts within Hudson's actual knowledge, establish a reasonable possibility that Anfield proximately caused Fernandez's accident.  First, as mentioned *supra*, Fernandez alleges in that Complaint that "Nucor, *its agents, servants* and/or employees" were negligent by "causing and/or permitting the premises under construction to be and remain in a dangerous, improper and unlawful condition," Nucor Underlying Compl. ¶ 84 (emphasis added), and that Fernandez was injured "when a temporarily suspended ceiling collapsed onto him by reason of the negligence of the defendant, *its agents, servants* and/or employees," *id.* ¶ 53 (emphasis added).  The General Services Contract between Nucor and Anfield established that Anfield was an "agent" or "servant" of Nucor because Anfield agreed to perform construction work for Nucor "pursuant to Purchase Orders issued and/or commencing within the effective dates of the Contract."  *See* General Services Contract at DEF-00946; *accord* Deft. Counter 56.1 Stmt. ¶ 13 (admitting to this provision of the General Services Contract).  Nucor and Anfield subsequently entered into a Purchase Order for Anfield to perform work at the Renovation Project including but not limited to "[f]urnish[ing] and install[ing] all Drywall and Ceiling work."  Purchase Order at DEF-00948; *accord* Deft. Counter 56.1 Stmt. ¶¶ 17, 19 (admitting to this specific purchase order as well as the provision setting forth Anfield's duties).  It was while this work was being performed that Fernandez alleges he was injured. Therefore, because the Nucor Underlying Complaint alleges that Fernandez was injured by a collapsed ceiling due to the negligence of Nucor and/or its agent or servant, and because Anfield was engaged as Nucor's agent or servant with the express duty of providing ceiling work at the

Renovation Project, there is a reasonable possibility that Anfield proximately caused Fernandez's accident.  Moreover, in addition to admitting these facts in its counter-statement of material facts under Local Civil Rule 56.1(b), as Phoenix points out on reply, Hudson "obviously knew of facts creating a reasonable possibility of coverage . . . when it offered to defend and indemnify Nucor" under the Hudson Primary Policy in December 2019.  Reply at 4 n.2; *see* Deft. Counter 56.1 Stmt. ¶ 43 (admitting that "[b]y correspondence dated December 2, 2019, Hudson agreed to accept the tender of Nucor only without reservation on a primary and non-contributory basis").

Thus, because Nucor is an additional insured under the Hudson Primary Policy, and because there is a reasonable possibility of coverage in the Underlying Action, Hudson has a duty to defend Nucor.

### 2.     Analysis as to Estée Lauder

Turning to Estée Lauder, Hudson argues that Estée Lauder is not an additional insured under the Hudson Primary Policy, Opposition at 9-10, and that Phoenix "lacks standing to seek additional insured coverage on behalf of" Estée Lauder, *id.* at 10.   The Court addresses each argument in turn.

#### i.     The "Additional Insured" Provision

Before beginning its analysis of the "additional insured" provision of the Hudson Primary Policy, the Court notes that "[i]nsurance polices are, in essence, creatures of contract, and, accordingly, subject to principles of contract interpretation."  *In re Ests. of Covert*, 761 N.E.2d 571, 576 (N.Y. 2001); *see also Crescent Beach Club LLC v. Indian Harbor Ins. Co.*, 468 F. Supp. 3d 515, 541 (E.D.N.Y. 2020) ("It is well-settled that 'interpretation of an insurance agreement is a question of law,' as is the question of whether an insurance provision is clear or ambiguous." (first quoting *High Point Design*, 911 F.3d at 93; then citing *VAM Check Cashing Corp. v. Fed.*

*Ins. Co.*, 699 F.3d 727, 729 (2d Cir. 2012)) (other citations omitted)).  "Under New York law, the initial interpretation of a contract is a matter of law for the court to decide." *InspiRx, Inc. v. Lupin Atlantis Holdings SA*, 554 F. Supp. 3d 542, 553 (S.D.N.Y. 2021) (quoting *K. Bell & Assocs., Inc. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir. 1996)).  A court must first determine if a contractual provision is ambiguous.  *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 616 (2d Cir. 2001).  "An ambiguity exists where the terms of a contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business."  *InspiRx*, 554 F. Supp. 3d at 553 (internal quotation marks and brackets omitted) (quoting *Morgan Stanley Grp. v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000)); *accord Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 37 N.E.3d 78, 81 (N.Y. 2015) ("[T]he test to determine whether an insurance contract is ambiguous focuses on the reasonable expectations of the average insured upon reading the policy and employing common speech . . . ." (internal quotation marks omitted)).  Ambiguity, however, "is absent where the contract's language provides a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a different opinion."  *Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 99 (2d Cir. 2012) (internal quotation marks omitted).

The Hudson Primary Policy contained an additional insured endorsement, extending coverage to "any . . . person or organization [Anfield is] required to add as an additional insured under the contract or agreement."  Hudson Primary Policy at DEF-00818.  As noted *supra*, the General Services Contract between Nucor and Anfield contained such a provision, but unlike with respect to Nucor, the additional insureds clause of the General Services Contract does not explicitly

20

name Estée Lauder.  Instead, it requires that "the following are included as additional insureds . . . : Nucor Construction Corp., *Owner*, and their directors, officers, employees and affiliates."  General Services Contract at DEF-00944 (emphasis added).  Phoenix argues that the word "Owner" here unambiguously refers to Estée Lauder.  Reply at 8-9.  Hudson contends that "Owner" is an ambiguous term, which is not defined in either the General Services Contract or the Purchase Order for the Renovation Project, and could refer to "the actual landowner, the building owner, or the project owner."  Opposition at 10.

The word "Owner," which is defined as "[s]omeone who has the right to possess, use, and convey something," *Owner*, *Black's Law Dictionary* (11th ed. 2019), is a broad term, and therefore may appear ambiguous when viewed in isolation and without an accompanying clarifying definition.  But "[c]ourts are not required to find contract language ambiguous where the interpretation urged by one party would strain the contract language beyond its reasonable and ordinary meaning."  *Steiner v. Lewmar, Inc.*, 816 F.3d 26, 32 (2d Cir. 2016) (internal quotation marks omitted).  In other words, "provisions are not ambiguous merely because the parties interpret them differently" and so "parties cannot create ambiguity from whole cloth where none exists."  *Universal Am. Corp.*, 37 N.E.3d at 81 (internal quotation marks omitted); *see also Olin Corp.*, 704 F.3d at 99 ("Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation." (internal quotation marks omitted)).  Furthermore, courts "do not consider particular phrases in isolation, but rather interpret them in light of the parties' intent as manifested by the contract as a whole."  *Gary Freidrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 313 (2d Cir. 2013).

The General Services Contract provides that "Purchaser and Vendor will utilize Purchase Orders setting forth the exact scope of work to be performed," General Services Contract at DEF-

00939, and that "each Purchase Order forms a part of this Contract," *id.* at DEF-00946. *Accord*
*id.* at DEF-00940 (defining "Purchaser" and "Vendor" as Nucor and Anfield respectively). The
Purchase Order, in turn, expressly states that the "[t]erms and conditions together with the
architectural and mechanical plans, specifications or *other documents as are incorporated by*
*reference* shall constitute the entire contract." Purchase Order at DEF-00950 (emphasis added).
The parties therefore clearly intended for other documents referenced in the Purchase Order to be
incorporated therein. The Purchase Order in turn references, and therefore incorporates, "Nucor's
Project Schedule," *id.* at DEF-00949; "drawings and specifications . . . from Design Republic
Dated 5-3-17," *id.* at DEF-00948; "contract documents" which set forth "Drywall and Ceiling
work" to be "furnish[ed] and install[ed]," *id.*; and, most significantly, "the Contract between the
Owner and the purchaser," *id.* at DEF-00950. As context for that final item, the Purchase Order
states that "[w]henever the word Purchaser appears . . . it shall mean Nucor Construction Corp."
*Id.*; *see also* General Services Contract at DEF-00940 ("'Purchaser' shall mean NUCOR
CONSTRUCTION CORP . . . ."). The Purchase Order is also addressed to Estée Lauder at the
top of the first page, care of the Bumble and Bumble salon at the address of the Renovation Project.
*See* Purchase Order at DEF-00948. This evidence, taken together, demonstrates that the General
Services Contract together with the Purchase Order unambiguously incorporated the contract
between Estée Lauder and Nucor—*i.e.*, the Estée Lauder-Nucor Agreement. Accordingly, the
Court considers the Estée Lauder-Nucor Agreement when interpreting the General Services
Contract.

The Estée Lauder-Nucor Agreement clearly defined "Owner" as The Estée Lauder
Companies, Inc. *See* Estée-Nucor Agreement at DEF-00179. It also required Nucor to add Estée
Lauder to its coverage as an "additional insured for claims caused in whole or in part by [Nucor's]

negligent acts or omissions." *Id.* at DEF-00194.  Consistent with those terms, the General Services Contract likewise required that "Owner" be "included as an additional insured[]."  General Services Contract at DEF-00944.  Moreover, the General Services Contract and the Purchase Order maintain this definition by consistently using the capitalized singular term "Owner" as distinct from other, similar terms like "Project Owner" and the "property owner."  *See, e.g.*, *id.* at DEF-00943-44 (referring to the "Project Owner" in a provision addressing pollution liability insurance); Purchase Order at DEF-00950 ("The Supplier hereby waives all rights to file a mechanics lien against the property owner . . . .").  Accordingly, the Court finds the term "Owner" to unambiguously refer to Estée Lauder.

But even if there were any ambiguity in the General Services Contract as to whether Estée Lauder was the "Owner," Hudson still would not prevail on its argument.  Typically, if a court finds that a "contract is ambiguous, the issue should be submitted to the trier of fact."  *Peleus Ins. Co. v. Atl. St. Dev. Corp.*, 587 F. Supp. 3d 7, 16 (S.D.N.Y. 2022) (quoting *K. Bell Assocs.*, 97 F.3d at 637).  "Nevertheless, a court may proceed to . . . 'resolve ambiguity in contractual language as a matter of law if the evidence presented about the parties' intended meaning is so one-sided that no reasonable person could decide to the contrary,' or if the nonmoving party 'fails to point to any relevant extrinsic evidence supporting that party's interpretation of the language.'"  *Great Minds v. John Wiley & Sons, Inc.*, 204 F. Supp. 3d 507, 512 (S.D.N.Y. 2016) (brackets omitted) (quoting *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 158 (2d Cir. 2000)).  In other words, if the movant points to extrinsic evidence supporting its interpretation of an ambiguous contract term, the burden shifts to the nonmovant to point to some evidence supporting a contrary definition to defeat a summary judgment motion.

Here, the Estée-Nucor Agreement would be relevant extrinsic evidence resolving any ambiguity. The agreement shows that Nucor agreed to provide contracting services to Estée Lauder in connection with a renovation project at Estée Lauder's Bumble and Bumble salon in the Meatpacking District of Manhattan. *See* Deft. Counter 56.1 Stmt. ¶ 9. Nucor subsequently extended its General Services Contract with Anfield to cover the Renovation Project by way of the Purchase Order. *See generally* Purchase Order. The Purchase Order, in turn, gave Nucor the right to "terminate and cancel any unperformed portion" of the Purchase Order "[i]n the event of the cancellation or termination of the Contract between the Owner and the purchaser," and specified that payments from Nucor to Anfield "shall be made only at such time as payments are made by the Owner to [Nucor]." *Id.* at DEF-00950. Given that Nucor was contracted to perform construction work at the Renovation Project by Estée Lauder, these provisions would only make sense if Nucor and Anfield meant "Owner" to refer to Estée Lauder.

Hudson's only response is to suggest that "the 'Owner' could be the actual landowner, the building owner, or the project owner." Opposition at 9. But it does not point to any record evidence to support these contentions. In the face of the otherwise unambiguous use of the term "Owner" in the General Services Contract and other documents to refer to Estée Lauder, combined with the only extrinsic evidence in the record further pointing to that meaning, no dispute of material fact exists.

### ii. Justiciability

Hudson next argues that "[t]o the extent that the Court is inclined to find that [Estée Lauder] is an additional insured on the Hudson Primary Policy, it should deny Phoenix's motion to the extent that it seeks a declaration that [Estée Lauder] is an additional insured . . . because [Phoenix] has not entered into an agreement to defend [Estée Lauder]" and so Phoenix "lacks standing to

seek additional insured coverage on behalf of [Estée Lauder]."  Opposition at 10.  The Court disagrees.

To be sure, the Court is without power to grant declaratory relief absent an "actual controversy" between the parties.  *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 272 (1941).  In other words, the Court must determine "whether the facts . . . show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Id.* at 273.  In addition, the Supreme Court has held that "the irreducible constitutional minimum of standing contains three elements":  "injury in fact," "a causal connection between the injury and the conduct complained of," and a "likel[ihood]" beyond "specu[lation]" "that the injury will be redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted).  "That the liability may be contingent does not necessarily defeat jurisdiction of a declaratory-judgment action.  Rather, courts should focus on the practical likelihood that the relevant contingencies will occur."  *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 92 (2d Cir. 2023) (internal quotation marks, brackets, and emphasis omitted).  Moreover, the Second Circuit has instructed that district courts "must distinguish between the duty to defend and the duty to indemnify in determining whether each issue posed in a declaratory-judgment action is ripe for adjudication."  *Id.* at 93.  (internal quotation marks and brackets omitted).  "With respect to the duty to defend, the district court must find a practical likelihood that a third party will commence litigation against the insured."  *Id.* (emphasis omitted).

The Court finds that Phoenix's case as to Estée Lauder is justiciable.  First, Estée Lauder has already been named as a defendant in the Underlying Action, and so this action is clearly ripe.  Second, while Phoenix admits that (at least as of the filing of its motion) Estée Lauder has not yet

accepted or rejected Phoenix's offer to defend it in the Underlying Action, *see* Deft. Counter 56.1 Stmt. ¶ 53, the Estée-Nucor Agreement requires Nucor to add Estée Lauder as an additional insured to its coverage for the Renovation Project, *see* Estée-Nucor Agreement at DEF-00194 ("The Contractor shall cause the commercial liability coverage required by the Contract Document to include: . . . the Owner . . . as an additional insured for claims caused in whole or in part by the Contractor's negligent acts or omissions . . . ."), and the Phoenix Policy extends coverage to those whom Nucor has "agree[d] in a written contract requiring insurance to include as an additional insured . . . with respect to liability for bodily injury, property damage or personal injury" if such injury or damage "is caused by acts or omissions of [Nucor] or [its] subcontractor," Phoenix Policy at TRV02784.   Moreover, litigation in the Underlying Action remains ongoing, Phoenix has already offered to defend Estée Lauder subject to a reservation of rights, and Hudson has refused and/or not responded Phoenix's tenders with respect to Estée Lauder, *see* Deft. Counter 56.1 Stmt. ¶¶ 49, 51.   Thus, absent court intervention, the Court finds the "practical likelihood" that Estée Lauder will accept Phoenix's offer of defense and indemnification to be sufficiently high that Phoenix's request for declaratory relief as to Estée Lauder is justiciable.   *See Eilerson Dev. Corp. v. Selective Ins. Grp., Inc.*, 542 F. Supp. 3d 177, 184-85 (N.D.N.Y. 2021) (finding insurer had standing to seek a declaration as to the status of additional insureds even though it did not "allege[] that it is incurring costs in defending [the additional insureds] in the Underlying Lawsuit" because it "submitted tender letters sent by the insurance companies for [the additional insureds] seeking defense and indemnification in the Underlying Lawsuit" and because "the Underlying Lawsuit is ongoing"), *aff'd sub nom.*, *Amerisure Ins. Co. v. Selective Ins. Grp., Inc.*, No. 21-1516, 2023 WL 3311879 (2d. Cir. May 9, 2023); *see also Beazley Ins. Co. v. Ace Am. Ins. Co.*, 150 F. Supp. 3d 345, 354-55 (S.D.N.Y. 2015) (finding that claims for declaratory relief survived—even if claims

for indemnification, contribution, and breach of contract were dismissed as unripe given that condition precedent to insurer's coverage was not yet satisfied—"because an actual controversy existed between the parties and judgment on the declaratory judgment counts would almost certainly resolve the primary issue in this case as to scope of coverage" (internal quotation marks and brackets omitted)), *aff'd*, 880 F.3d 64 (2018); *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 261 F. Supp. 2d 293, 294-95 (S.D.N.Y. 2003) (similar).

\* \* \*

Accordingly, Estée Lauder is an additional insured under the Hudson Primary Policy and Phoenix has standing to seek a declaration that Hudson has a duty to defend Estée Lauder.  The Court further finds that Hudson has a duty to defend Estée Lauder for the same reasons as Nucor: the allegations in the Underlying Action, coupled with facts actually known to Hudson, suggest a reasonable possibility of coverage arising from Anfield proximately causing the accident at the Renovation Project.  *See supra* III.A.1.

## B.     Priority of Coverage

Having determined that Hudson has a duty to defend Nucor and Estée Lauder, the next question is whether Hudson's duty is primary or secondary to Phoenix's.  "When two insurance policies both cover the same liability, the priority of coverage determines which insurer must pay." *Liberty Mut. Ins. Corp.*, 505 F. Supp. 3d at 276.  "Primary insurance policies provide the first layer of insurance coverage" whereas "[e]xcess liability policies . . . provide coverage for losses that exceed the limits of the primary policy." *Olin Corp. v. Lamorak Ins. Co.*, 332 F. Supp. 3d 818, 848 (S.D.N.Y. 2018).  "Where the same risk is covered by two or more policies, each of which was sold to provide the same level of coverage (as is the case here), the priority of coverage (or, alternatively, allocation of coverage) among the policies is determined by comparison of their

respective 'other insurance clauses.'" *Sport Rock Int'l*, 878 N.Y.S.2d at 345; *see also Great N. Ins. Co.*, 708 N.E.2d at 170 ("When an insured has more than one potentially applicable policy for a claim, courts determine the insurers' obligations to the insured by applying a body of law developed to resolve 'other insurance' disputes . . . ."). "Where one insurance policy is primary and one insurance policy is excess based on the 'other insurance' clauses, the 'primary insurer has the primary duty to defend on behalf of its insureds and it generally has no entitlement to contribution of an excess insurer.'" *Liberty Mut. Ins. Co.*, 505 F. Supp. 3d at 276 (quoting *Fieldston Prop. Owners Ass'n, Inc. v. Hermitage Ins. Co.*, 945 N.E.2d 1013, 1018 (N.Y. 2011)). This presents a question of law for the Court to resolve. *See Charter Oak Fire Ins. Co.,* 462 F. Supp. 3d at 327.

Hudson does not appear to respond to or challenge Phoenix's contention that the Hudson Primary Policy is primary, and the Phoenix Policy is excess. *See* Motion at 12-13. The Court agrees and, for the sake of completeness, will explain why. The Hudson Primary Policy's "other insurance" provision states: "This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below." Hudson Primary Policy at DEF-00806. None of the exceptions in Paragraph b., which concerns "Excess Insurance," apply. Furthermore, the Hudson Primary Policy contains the following endorsement:

> When you are specifically required by a written contract to provide insurance that is primary and non-contributory and the written contract so requiring is executed by you before any "occurrence" or offense, this insurance will be primary and the other insurance will not contribute with this insurance, but only if and to the extent required by that written contract.

*Id.* at DEF-00841. As discussed *supra*, the General Services Contract between Nucor and Anfield required Anfield to provide primary and non-contributory coverage to both Nucor and Estée

Lauder (*i.e.*, "Owner") as additional insureds.  *See* General Services Contract at DEF-00944. Accordingly, the Hudson Primary Policy is primary.

In contrast, the Phoenix Policy's "other insurance" provision states: "This insurance is excess over any of the other insurance, whether primary, excess, contingent, or on any other basis, that is available to the insured when the insured is added as an additional insured under any other policy, including any umbrella or excess policy."  Phoenix Policy at TRV02780.  Since Nucor and Estée Lauder are entitled to coverage under the Hudson Primary Policy pursuant to the General Services Contract and that Policy's additional insureds provision, *see* Hudson Primary Policy at DEF-00818, the Phoenix Policy is excess.

Accordingly, Hudson's coverage obligations under the Hudson Primary Policy are primary to Phoenix's under the Phoenix Policy.  *See Fieldston Property Owners Ass'n*, 945 N.E.2d at 1018.

## C.   Waiver

Lastly, Hudson argues that even if it has a duty to defend Nucor and Estée Lauder, and even if its coverage obligations are primary to Phoenix's, Phoenix has voluntarily waived all defense costs incurred from December 2, 2019 onwards by rejecting Hudson's offer of coverage under the Hudson Primary Policy.  Opposition at 10-13.  Specifically, Hudson notes that Phoenix admits that Hudson "offered to accept the defense of Nucor without reservation" under the Hudson Primary Policy, but Phoenix "rejected this offer, though it had no grounds to do so," *id.* at 11 (citing Deft. Counter 56.1 Stmt. ¶ 43), and that "Nucor was not entitled to a defense under the Hudson Excess Policy as defense is only owed under the Hudson Excess Policy only upon the exhaustion of the Hudson Primary Policy," *id.* at 12.

Under New York law, "waiver . . . is a voluntary and intentional relinquishment of a known right."  *Albert J. Schiff Assocs., Inc., v. Flack*, 417 N.E.2d 84, 87 (N.Y. 1980).  Waiver "may be

accomplished by express agreement or by such conduct or failure to act as to evince an intent not to claim the purported advantage," *Hadden v. Consol. Edison Co. of N.Y., Inc.*, 382 N.E.2d 1136, 1138 (N.Y. 1978), so long as it is "clear, unequivocal and deliberate," *Silverman v. Silverman*, 756 N.Y.S.2d 14, 19 (1st Dep't 2003). *See also N. Am. Foreign Trading Corp. v. Mitsui Sumitomo Ins. USA, Inc.*, 499 F. Supp. 2d 361, 375 (S.D.N.Y. 2007) ("Waiver 'should not be lightly presumed.'" (quoting *Gilbert Frank Corp. v. Fed. Ins. Co.*, 520 N.E.2d 512, 514 (N.Y. 1988))).[11]

The Court does not find that Phoenix's rejection of Hudson's counter-tender constituted an intentional relinquishment of its rights, such that Phoenix waived defense costs incurred on behalf of Nucor, particularly given Phoenix's continuous and diligent pursuit of coverage from Hudson. On December 2, 2019, Hudson agreed to accept the tender of the defense of Nucor only without reservation on a primary and non-contributory basis, but when Phoenix followed up that same day to confirm that Hudson's offer also extended to the Hudson Excess Policy that it had issued to Anfield, Hudson denied that tender. Deft. Counter 56.1 Stmt. ¶¶ 43-45. On December 3, 2019, Phoenix requested that Hudson reconsider, yet Hudson continued to deny the tender under

---

[11] Waiver is an affirmative defense under New York law, *see, e.g.*, *United Hay, LLC v. Harounian*, 184 N.Y.S.3d 16, 17-18 (1st Dep't 2023); *Marcum, LLP v. Silva*, 986 N.Y.S.2d 508, 511 (2d Dep't 2014), yet Hudson did not include waiver among the ten purported affirmative defenses that it asserted in answering the Amended Complaint, *see* Dkt. 20 ¶¶ 36-45. Arguably, then, Hudson has waived its right to assert that defense as a ground to oppose summary judgment. *See Nat'l Mkt. Share v. Sterling Nat'l Bank*, 392 F.3d 520, 526 (2d Cir. 2004) (internal quotation marks omitted). *But see Windward Bora LLC v. Browne*, No. 20 Civ. 4748 (BCM), 2023 WL 2744684, at *13 n.22 (S.D.N.Y. Mar. 31, 2023) ("Where, as here, the defense is briefed extensively at the summary judgment stage – by both sides – and the plaintiff voices no objection to defendants' failure to raise the issue formally in the pleadings, the district court may deem such objections waived and entertain the defense." (internal quotation marks omitted)). But because Phoenix does not raise this threshold ground for rejecting Hudson's waiver argument, the Court turns to the merits of that argument.

Anfield's excess policy.  *Id.* ¶¶ 46-47.[12]  Then, when Phoenix initially rejected Hudson's offer to defend and indemnify Nucor under the Hudson Primary Policy only and without extending to Anfield's excess policy, Phoenix immediately continued its efforts to seek coverage from Hudson, including by asking Hudson to reconsider its position the very next day.  Deft. Counter 56.1 Stmt. ¶¶ 46-47.  Phoenix subsequently retendered the defense of Nucor and/or Estée Lauder on October 6, 2020 and again February 15, 2021.  *Id.* ¶¶ 48, 50.  It was only after Hudson denied the October 6, 2020 tender and then failed to respond to the February 15, 2021 tender that Phoenix finally agreed to assume Estée Lauder's defense, and even then, subject to a reservation of rights.  *Id.* ¶¶ 49, 51-52.  And finally, Phoenix has commenced the instant litigation to seek a declaration that Hudson has a duty to defend Nucor and Estée Lauder.

Accordingly, the Court finds that Phoenix has not waived its position that Hudson has a duty to defend and indemnify its insureds, and thus rejects Hudson's waiver defense.

## IV.  Conclusion

Accordingly, Phoenix's motion for partial summary judgment is granted.  The parties shall appear for a status conference in Courtroom 12D of the Daniel Patrick Moynihan U.S. Courthouse, 500 Pearl Street, New York, New York, on August 16, 2023, at 11:30 a.m.  The Clerk of Court is respectfully directed to close Docket Number 43.

SO ORDERED.

Dated: August 8, 2023
        New York, New York

_____
JOHN P. CRONAN
United States District Judge

---

[12] It is understandable why Phoenix would not have been satisfied with Hudson's stance. The insurance limit under the Hudson Primary Policy is $1,000,000 per occurrence, Hudson Primary Policy at DEF-00792, yet Fernandez claimed $1,200,000 in future lost earnings alone in his bill of particulars, Underlying Bill of Particulars ¶ 12(g), in addition to various injuries, *id.* ¶ 11, and special damages, *id.* ¶ 17.